NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0413n.06

No. 07-5590

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 27, 2011*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,          )
                                   )
    Plaintiff-Appellee,            )
                                   )
                                   )  ON APPEAL FROM THE UNITED
v.                                 )  STATES DISTRICT COURT FOR THE
                                   )  WESTERN DISTRICT OF KENTUCKY
TIMOTHY LAMB,                      )
                                   )
    Defendant-Appellant.           )

Before: COLE and GIBBONS, Circuit Judges; CLELAND, District Judge.[*]

CLELAND, District Judge. Timothy Lamb entered a plea of guilty to four counts involving possession and transportation of child pornography and was sentenced to 210 months imprisonment. He appeals this sentence as procedurally unreasonable because the district court did not expressly address the request for a downward variance based upon his history of heart disease. Lamb did not object to this aspect of his sentence at trial, and we review only for plain error. We **AFFIRM**.

## I. BACKGROUND

In March 2005, the National Center for Missing and Exploited Children was contacted by an internet hosting company with information that it had discovered images of child pornography

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

uploaded to a group site hosted on its network. It appeared the group had been used to distribute and trade such images, and the hosting company immediately disabled the group. Upon the issuance of a subpoena, the Federal Bureau of Investigation obtained the internet protocol addresses and transaction logs of group members. Tracing one of these addresses back to its source led the FBI to Lamb's residence in Louisville, Kentucky. On September 29, 2005, FBI agents searched the residence and found an immense collection of pornography, containing approximately 17,000 images and 135 videos of child pornography. When confronted, Lamb confessed to uploading images to and downloading images from the group

A five-count indictment was returned charging Lamb with three counts of knowingly transporting child pornography, 18 U.S.C. § 2252(a)(1), one count of knowingly receiving child pornography, 18 U.S.C. § 2252(a)(2), and one count of knowingly possessing child pornography, 18 U.S.C. § 2252(a)(4)(B). A sixth count for forfeiture under 18 U.S.C. § 2253 was also included. Without the benefit of a plea agreement, Lamb pled guilty to the transportation and possession counts on January 24, 2006.

A presentence report was produced, which calculated a total offense level of 37 under the U.S. Sentencing Guidelines. Based upon the total offense level and Lamb's lack of a criminal history, the presentence report calculated the Guidelines range of 210-262 months and noted the statutory maximum of 240 months. The report also noted Lamb's history of heart disease, including a heart attack suffered in May, 2000. In its sentencing memorandum, the government argued for upward departure based upon the sheer number of images and other photographs of local children,

which it argued indicated a predatory intent and increased risk to the community even though the photographs were not inherently pornographic. In his memorandum, Lamb argued that the non-pornographic photographs were part of an unrelated civil case involving a neighbor and asked for a downward variance on the basis of Lamb's health problems.

On April 17, 2007, the district court sentenced Lamb to 210 months imprisonment and ten years of supervised release. At the hearing, the testimony of two expert witnesses was presented concerning the number of images and Lamb's risk of recidivism. The government and Lamb reiterated the arguments set out in their sentencing memoranda. Both addressed at some length Lamb's health issues. After lamenting the difficulty of maintaining uniformity in sentences for child pornography offenses, the court noted the "significant number of images that are involved" in explaining the sentence. The court also discussed and rejected the government's argument that the non-pornographic photographs of neighborhood children indicated predatory behavior. Finally, the court made a blanket statement that it had considered the Guidelines and the 18 U.S.C. § 3553(a) factors before pronouncing a sentence of 210 months. Judgment was entered on April 20, 2007, and Lamb appealed on April 30, 2007. The only issue on appeal is whether the sentencing court failed to consider Lamb's request for a downward variance based upon his health history.[1]

---

[1]Although Lamb also appealed the constitutionality of the U.S. Sentencing Guidelines § 2G2.2 enhancement for number of images as directly legislated in violation of the separation of powers doctrine, both Appellant and Appellee conceded at oral argument that the question had already been decided in a recent opinion of this court, *United States v. McNerney*, 636 F.3d. 772, 778 (6th Cir. 2011) (finding § 2G2.2 valid).

## II. ANALYSIS

Lamb claims his sentence is procedurally unreasonable because the court failed to consider the § 3553(a) factors, specifically his history of heart disease. We generally review sentences for abuse of discretion, determining first whether sentences are procedurally reasonable and then whether they are substantively reasonable. *United States v. Bates*, 552 F.3d 472, 476 (6th Cir. 2009) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). When an objection has not been preserved at sentencing, as happened here, an appeal based on the waived objection is reviewed only for plain error. Fed. R. Crim. P. 51(b); *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). Lamb's argument for a downward variance on the grounds of his common health problems presents nothing more than a generic request for a lenient sentence. As such, the district court's failure to expressly address the issue did not constitute plain error.

### A. Standard of Review

Lamb's appeal challenges only the sufficiency of the sentencing court's explanation of his sentence. Because Lamb failed to object to the explanation when asked whether he had "any objections to the sentence pronounced not previously [] raised on behalf of the defendant" at the conclusion of sentencing, a plain error standard applies. *See Vonner*, 516 F.3d at 386; *United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004). Application of this standard is contested by Lamb, who asserts that the objection was preserved by his earlier request for a variance. Lamb's argument

misses the mark. An objection cannot be "preserved" in advance of a sentencing event that has yet to occur—and which may never occur. A defendant need not object to the substantive reasonableness of a sentence when pronounced, but he is required to object in order to preserve abuse of discretion review of alleged procedural errors. A failure to consider the § 3553(a) sentencing factors and a failure to explain adequately the sentencing decision are examples of procedural errors that must be presented to the district court. *Gall*, 552 U.S. at 51; *Vonner*, 516 F.3d at 392. They are conceptually distinct from an argument that the court abused its discretion in weighing the various considerations during sentencing; this claim is reviewed for substantive reasonableness. *Gall*, 552 U.S. at 56; *Vonner*, 516 F.3d at 390.

Lamb contends that raising the issue of his health in both his sentencing memorandum and during the sentencing hearing preserves the objection. If Lamb were objecting to the discretionary rejection of the request for a variance, his contention would be sound. However, Lamb objects to the alleged failure of the district court even to *consider* his request for variance. The argument in *Vonner* is directly analogous. 516 F.3d at 382. At his sentencing hearing, Vonner argued that the court should apply a downward variance to his sentence because he had sustained abuse and neglect during his childhood. The district court then implicitly rejected this argument by saying only that it considered "the history and characteristics of the defendant," and it proceeded to inquire whether there were any objections to the sentence that had not been previously raised. Vonner's counsel voiced no objections. On appeal, however, Vonner argued that the district court had not adequately considered his request for a downward variance or explained its decision to reject the variance. This

court, sitting *en banc*, held that, under *Bostic,* Vonner had waived his objection by not objecting to the alleged failure to consider his history and characteristics. As noted in *Vonner*, it is an absurdity to object to a court's failure to consider a § 3553(a) factor in sentencing before the court has pronounced sentence. *Id.* at 386; *see also United States v. Simmons*, 587 F.3d 348, 354 (6th Cir. 2009); *United States v. Blackie*, 548 F.3d 395, 398 (6th Cir. 2008). Consequently, substantive reasonableness need not be raised until appeal, but procedural objections must be presented to the district court in order to preserve them for appeal.

In the instant case, Lamb first raised a request for variance based upon his health problems in his sentencing memorandum and reiterated it at the sentencing. By the conclusion of the hearing, however, the court had not expressly addressed the health concerns in explaining the sentence imposed. When first asked whether he had any other objections, however, counsel asked only that Lamb be housed near his elderly and ailing mother, which the court agreed to recommend. Asked a second time, Lamb's counsel replied "no objection, Your Honor." Thereafter, Lamb did in fact raise an issue regarding the sentence imposed for the count of possession, which exceeded the statutory maximum sentence. The court recognized this and clarified the sentence for this count capped at 120 months, to run concurrently with the three counts for transporting child pornography. Before concluding the sentencing hearing, the court asked a third time, and no objection was voiced. The court thrice afforded Lamb the opportunity to object, and he thrice failed to do so. Now, for the first time, Lamb seeks to have this court review the sentence based upon an objection never made, arguing the district court failed to consider his health problems. The materially indistinguishable

decision in *Vonner* precludes abuse of discretion analysis. 516 F.3d at 386 (failure to challenge adequacy of explanation waives objection). Therefore, the court will review for plain error.

As recently summarized by the Supreme Court,

> an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an "error"; (2) the error is "clear or obvious, rather than subject to reasonable dispute"; (3) the error "affected the appellant's substantial rights, which in the ordinary case means" it "affected the outcome of the district court proceedings"; and (4) "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

*United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010) (quoting *Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009)); *see also Johnson v. United States*, 520 U.S. 461, 466-67 (1997); *United States v. Olano*, 507 U.S. 725, 731-37 (1993). "At a minimum, a court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Olano*, 507 U.S. at 734; *accord Johnson*, 520 U.S. at 467. When reviewing sentences for plain error, the court applies "a deferential standard in which sentences are reversed only in 'exceptional circumstances . . . where the error is so plain that the trial judge . . . [was] derelict in countenancing it.'" *Simmons*, 587 F.3d at 365 (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

## B. No Plain Error

Turning to the first element of plain error analysis, there must be error before there can be plain error. Although the Guidelines are merely advisory after *Booker*, district courts are required to consider the correctly calculated Guidelines range when sentencing. *United States v. Booker*, 543

U.S. 220, 264 (2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007) (citing *Rita v. United States*, 551 U.S. 338, 347 (2007)); *accord United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007). The sentencing court must further consider the factors listed in 18 U.S.C. § 3553(a), "make an individualized assessment based on the facts presented," and state its reasons for imposing the sentence as required by 18 U.S.C. § 3553(c). *Gall*, 552 U.S. at 50; *accord United States v. Petrus,* 588 F.3d 347, 351-52 (6th Cir. 2009); *Bolds*, 511 F.3d at 579-80.

The district court did not err in declining to discuss its reasoning for not varying Lamb's sentence due to his poor health. Although the better practice may be to state that the court has considered and rejected the request, "there is a sizeable gap between good sentencing practices and reversibly bad sentencing practices." *Vonner*, 516 F.3d at 389. All that a sentencing court must do is consider and decide all clearly presented arguments for departure or variance. *Rita*, 551 U.S. at 358; *Vonner*, 516 F.3d at 388. "When a defendant raises a particular[, nonfrivolous] argument in seeking a lower sentence, the record must reflect both that the district court considered the defendant's argument and that the judge explained the basis for rejecting it," *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010) (citations omitted) (alteration in original), but the requisite indication of consideration by the court varies in proportion to the complexity of the argument, *Rita*, 551 U.S. at 356-57; *Vonner*, 516 F.3d at 387; *Simmon*s, 587 F.3d at 362. Regardless of whether it may be error to grant a variance without some indication of the reasoning, discussion of all rejected requests for variances is not required. "Although Congress requires a court to give

'the reasons' for its sentence, 18 U.S.C. § 3553(c), it does not say that courts must give the reasons for rejecting any and all arguments by the parties for alternative sentences." *Vonner*, 516 F.3d at 387. It suffices that "[t]he record makes clear that the sentencing judge listened to each argument," "considered the supporting evidence," "was fully aware of the defendant's various physical ailments[,] and imposed a sentence that takes them into account." *Rita*, 551 U.S. at 358.

At the sentencing hearing, defense counsel repeatedly mentioned Lamb's heart problems, arguing for a variance on that basis.[2] This was Lamb's primary argument for a lower sentence. The government likewise addressed the issue, citing a string of cases wherein harsh sentences were imposed despite the defendants' ages or infirmities.[3] Directly responding to Lamb's request, the government noted that his condition was not unique and "his medical needs can be met by the Bureau of Prisons." After hearing statements by both sides, the court proceeded to sentence Lamb to 210 months, the lowest point within the Sentencing Guidelines range.

---

[2]Speaking of Lamb's health, defense counsel told the court: "I would like to tell the Court I know what type of sentence I would like to recommend, but I don't -- I don't really know how long he has with the heart attack at age 40. I know he doesn't have the life expectancy of a healthy 40 year-old."

[3]The government offered the following:

> The factors that [Lamb] has brought to the Court today that Mr. Lamb has suffered a heart attack in a relatively early age, that's very unfortunate. But he can certainly -- his medical needs can be met by the Bureau of Prisons. He may or may not have a long life expectancy. I don't know. But age in and of itself, again, is not a factor traditionally acceptable for a deviation of a lower sentence.

Although the court did not discuss at length Lamb's routine argument for a variance, it did refer to the cases mentioned by the government. In fact, the court lamented the lack of uniformity in sentences imposed for conduct similar to that of Lamb.[4] The number and type of images involved were discussed by the court, as well as Lamb's role in trading images. The court considered these aspects of the offense and determined "this is the type of sentence that should be given within the sentencing guidelines." The court did not stop with that pronouncement; it further discussed and rejected the government's argument for a longer sentence based upon the non-pornographic photographs of neighborhood children. Under such circumstances, it seems that the court simply found that argument lacking sufficient weight to warrant any more particularized consideration.

> Where a matter is as conceptually simple as [a request for variance based upon health, fear of retaliation in prison, and military record], and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively [than to note the inappropriateness of the requested variance and the appropriateness of a sentence within the Guidelines range].

*Rita*, 551 U.S. at 359. Following *Rita*, this court has similarly found that a sentencing court need not engage in a rote recitation of every conceivable ground for variance requested by a defendant. *E.g.*, *United States v. Locklear*, 631 F.3d 364, 370-71 (6th Cir. 2011); *United States v. Brooks*, 628 F.3d 791, 798 (6th Cir. 2011); *United States v. Martinez*, 588 F.3d 301, 327 (6th Cir. 2009);

---

[4]The court began stating Lamb's sentence by noting "[t]hese cases . . . are very difficult -- become very difficult because of the -- when you apply the Guidelines, the . . . sentencings go up rapidly. The government has talked about similarity of sentences, and . . . that's difficult . . . to look at. And I've gone through and reviewed a number of them."

*Simmons*, 587 F.3d at 361-62; *Vonner*, 516 F.3d at 388. While the district court would have done well to have mentioned and explained its rejection of the argument, nothing in the record suggests the court failed to consider the request for a downward variance. Indeed, the court indicated that it considered the other arguments and made reference to the cases presented by the government for comparison. Therefore, Lamb has not shown that the district court erred in not addressing his request for a variance based upon his health concerns.

Even if we were to find that the district court erred in failing to properly address the claimed ground for a variance, Lamb has not shown that this is a "clear or obvious" error. Previous cases have recognized that routine health problems such as that presented in this case do not require extensive analysis by the sentencing court. *See, e.g.*, *Locklear,* 631 F.3d at 370-71; *United States v. Carpenter*, 359 F. App'x 553, 558 (6th Cir. 2009); *United States v. Ivey*, 307 F. App'x 941, 943-44 (6th Cir. 2009). As noted by the government at sentencing, the Bureau of Prisons is equipped to treat one of the most common significant ailments of the modern world. The presentence report confirms that Lamb was receiving medical treatment while awaiting sentencing. Lamb offers no reason that his ill health necessitates a downward variance, nor does he argue that his health is unusually poor. Instead, he presented a routine argument for a reduced sentence because he has a higher statistical probability of premature death than an abstract ideal of a healthy individual of his age. This is precisely the sort of conceptually simple argument that need not be extensively addressed by the court in sentencing. *See Rita*, 551 U.S. at 356-57; *Vonner*, 516 F.3d at 387.

We have repeatedly held that "a ritualistic incantation of the § 3553(a) factors" is unnecessary. *Wallace*, 597 F.3d at 802; *United States v. Chandler*, 419 F.3d 484, 488 (6th Cir. 2005). To hold otherwise would be to require a sentencing court to expressly address and reject every potential basis for a variance derived from a defendant's history, producing nothing more than a rote recitation of medical conditions, mental problems, childhood traumas, deficient parenting, substance abuse, economic distress, "bad decisions," and the many other well-known and too-common landmarks of the path to criminal behavior. While such an analysis may be informative in many cases, it is not required of proper sentencing. *Rita*, 551 U.S. at 357-58; *Vonner*, 516 F.3d at 386-87. Additionally, we are uncertain about the fundamental substance of Lamb's argument—that a shortened life expectancy demands a substantial explanation at sentencing—since the argument implies that being nearer the grave confers a license to violate the law, or at least a discount on the consequences. In the circumstances of this case, we disagree. We find that there was no plain error committed in not discussing Lamb's request for variance.

### III. CONCLUSION

The judgment of the district court is **AFFIRMED**.